UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

JESUS HERNANDEZ,

                                        Plaintiff,          **COMPLAINT**

                 -against-                                  22 Civ. 0504

THE CITY OF NEW YORK, DET. YERALDY          **JURY TRIAL DEMANDED**
BONIFACIO, UNDERCOVER #332, and P.O.s  JOHN
and JANE DOE #1-10, individually and in their official
capacities, (the names John and Jane Doe being fictitious,
as the true names are presently unknown),

                                        Defendants.

--------------------------------------------------------------------X


        Plaintiff JESUS HERNANDEZ, by his attorney, ROSE M. WEBER, complaining of the

defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

        1.      Plaintiff brings this action for compensatory damages, punitive damages and

attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights,

as said rights are secured by said statutes and the Constitutions of the State of New York and the

United States.  Plaintiff also asserts supplemental claims pursuant to 2021 N.Y.C. Local Law No.

48, N.Y.C. Admin. Code §§ 8-801 *et seq*.

## JURISDICTION

        2.      This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the

First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

        3.      Jurisdiction is founded upon 28 U.S.C. §§  1331, 1343 and 1367.

## VENUE

4.      Venue is properly laid in the Southern District of New York under U.S.C. § 1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.      Plaintiff JESUS HERNANDEZ is a Latino, a citizen of the United States, and at all relevant times a resident of the City and State of New York.

7.      Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

9.      That at all times hereinafter mentioned, the individually named defendants DET. YERALDY BONIFACIO, UNDERCOVER #332, and P.O.s  JOHN and JANE DOE #1-10 were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10.     That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant THE CITY OF NEW YORK.

12.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

### INCIDENT FACTS

13.     On the evening of November 30, 2020, plaintiff JESUS HERNANDEZ was lawfully present on W. 144th Street between Amsterdam Avenue and Broadway, in the County, City, and State of New York.

14.     At aforesaid time and place, plaintiff JESUS HERNANDEZ was suddenly accosted by members of the New York City Police Department, including, upon information and belief, defendant DET. YERALDY BONIFACIO.

15.     Defendants handcuffed plaintiff JESUS HERNANDEZ and placed him under arrest on narcotics charges, despite defendants' knowledge that they lacked probable cause to do so.

16.     Plaintiff JESUS HERNANDEZ was arrested because defendant UNDERCOVER #332 falsely claimed to have bought crack from plaintiff on five separate occasions between July 2020 and October 2020.

17.     In the period from July 2020 to October 2020, plaintiff JESUS HERNANDEZ did not sell crack or any other unlawful substance, and did not participate in any such sale.

18.     In the period from July 2020 to October 2020, plaintiff JESUS HERNANDEZ did not behave in a manner that would suggest to any reasonable police officer that plaintiff was selling crack or any other unlawful substance, or was participating in any such sale.

19.     Upon information and belief, defendant DET. YERALDY BONIFACIO knew, or in the exercise of due diligence should have known, that defendant UNDERCOVER #332's allegations were false.

20.     Defendants transported plaintiff JESUS HERNANDEZ to the 30th Precinct of the New York City Police Department in Manhattan, New York.

21.     While at the precinct, plaintiff JESUS HERNANDEZ was subjected to an unlawful strip search.

22.     Defendants transported plaintiff JESUS HERNANDEZ from the 30th Precinct to Manhattan Central Booking.

23.     Plaintiff JESUS HERNANDEZ was held and detained in custody for approximately twenty-four hours.

24.     Defendants initiated criminal proceedings against plaintiff JESUS HERNANDEZ despite defendants' knowledge that they lacked probable cause to do so.

25.     Plaintiff JESUS HERNANDEZ made approximately five court appearances before learning on July 19, 2021 that all charges against him had been dismissed.

26.     As a result of the foregoing, plaintiff JESUS HERNANDEZ sustained, *inter alia*, loss of liberty, emotional distress, embarrassment, and humiliation, damage to reputation, and deprivation of his constitutional rights.

## MONELL FACTS

27.    Both before and after the arrest of plaintiff JESUS HERNANDEZ, a custom and practice of lawlessness and corruption pervaded NYPD narcotics operations.

28.    This custom and practice was first exposed in January of 2008, when four officers from Brooklyn South Narcotics were arrested and charged with criminal offenses.

29.    In June 2011, Sgt. William Eiseman pled guilty to fabricating narcotics charges and admitted to training young officers to do the same (Melissa Grace, *NYPD Sgt. William Eiseman Pleads Guilty to Lying Under Oath in Plea Deal*, N.Y. Daily News, June 27, 2011).

30.    The on-going custom and practice in making unlawful and fraudulent narcotics arrests was confirmed in October of 2011 in sworn testimony by former NYPD officer Steven Anderson.

31.    On May 29, 2013, P.O. Isaias Alicea was convicted of ten felony counts of filing a false document and one misdemeanor count of official misconduct after falsely claiming that he saw two men conducting a drug deal in West Harlem.

32.    In August 2013 former NYPD officer Genaro Morales testified that he and other members of his Bronx Narcotics team fabricated stories about narcotics possession and sale (Tara Palmeri & Kirstan Conley, *Cops Lied to Reach Arrest Quotas*, N.Y. Post, Oct. 14, 2013).

33.    In 2015, SDNY Judge Engelmeyer suppressed narcotics evidence because of Bronx P.O. Luis Rios' perjury (Josh Saul, *Lying Cop Costs NYPD Big-Time Bust*, N.Y. Post, May 27, 2015).

34.    In early 2017, Detectives Sasha Cordoba and Kevin Desormeau were indicted in Queens for lying about the circumstances of narcotics arrests.  In January 2018, Det. Desormeau was convicted of perjury.

35.     In October 2017, EDNY Judge Weinstein permitted a *Monell* claim to go forward in a case alleging perjury by narcotics officers, noting that "A reasonable jury may find that this practice is not isolated to a few 'bad' police officers, but is endemic, that NYPD officials are aware this pattern exists and that they have failed to intervene and properly supervise." (*Cordero v. City of New York*, No. 15 CV 3436, 2017 WL 4685544, at *11 (E.D.N.Y. Oct. 17, 2017).)

36.     In April 2019, Det. Joseph Franco was charged "with 26 criminal counts, including perjury and official misconduct, after investigators in the Manhattan district attorney's office said that he had testified to witnessing several drug buys that video footage showed did not happen or that he could not have seen." (Troy Closson, *A Detective Was Accused of Lying. Now 90 Convictions May Be Erased*, N.Y. Times, Apr. 6, 2021.)

37.     In 2019, Queens Narcotics detective Matthew Borden was found not to be credible. *People v. Maiwandi*, 170 A.D.3d 750, 750, 95 N.Y.S.3d 361, 362 (N.Y. App. Div. 2d Dep't 2019)

38.     Upon information and belief, because of the custom and practice of corruption and lawlessness by NYPD narcotics officers, approximately 500 criminal prosecutions have had to be dismissed by the Queens County and Kings County District Attorney's Offices.

39.     As a direct result of this custom and practice, defendants in the instant matter felt free to arrest plaintiff JESUS HERNANDEZ without probable cause and to manufacture evidence against him.

40.     Both before and after the arrest of plaintiff JESUS HERNANDEZ, NYPD officers were subject to "productivity goals" (i.e., arrest quotas).

41.     The existence of the aforesaid custom and practice may be inferred from:

- NYPD Operations Order 52, issued in October 2011, mandating that police officers be evaluated on their activity numbers (including number of arrests) and that officers be disciplined

if their numbers are too low; and requiring that NYPD managers set "performance goals" for "proactive enforcement activities" including "self-initiated arrests";

- the directive issued in 2002 by Deputy Chief Michael Marino setting quotas for summonses and arrests (Sean Gardiner, *NYPD Chief Set "Goals" for Officers*, Wall St. J., Mar. 22, 2013);

- the 2006 admission by Deputy Commissioner Paul J. Browne that commanders are permitted to set "productivity goals" (Kareem Fahim, *Police in Brooklyn Used Illegal Ticket Quotas, Arbitrator Decides*, N.Y. Times, Jan. 20, 2006);

- the 2010 admission by Deputy Commissioner Paul J. Browne that police officers are provided with "productivity goals" (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

- the information provided by whistle-blower police officer Adrian Schoolcraft documenting the existence of arrest quotas (Rocco Parascandola, *NYPD Whistleblower Adrian Schoolcraft Files for Retirement*, N.Y. Daily News, Dec. 4, 2015);

- the information provided by whistle-blower police officer Adil Polanco that commanders relentlessly pressure police officers to make more arrests (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

- the information provided by whistle-blower police officer Craig Matthews that police are forced to adhere to an illegal quota system, and that he was retaliated against for protesting the quotas (Graham Rayman, *Craig Matthews, Police Officer, Has His Quota Lawsuit Reinstated by Federal Appeals Court*, Village Voice, Nov. 29, 2012);

- audiotapes secretly recorded at the 81st Precinct in 2010, in which precinct commanders threatened police officers about what would happen if they did not meet arrest quotas (Graham Rayman, *The NYPD Tapes: Inside Bed-Stuy's 81st Precinct*, Village Voice, May 4, 2010);

- testimony by P.O. Bryan Rothwell at his departmental trial in January 2014 that police officers in his unit in Brooklyn were required to make at least two arrests per month (Rocco Parascandola, *Brooklyn Cop Testifies That He Was Expected to Make Two Arrests, Issue 20 Summonses Each Month*, N.Y. Daily News, Mar. 6, 2014);

- the facts set forth in the Second Amended Complaint in the class-action *Floyd v. City of New York*, 08 Civ. 1034 (SAS), all of which are incorporated herein, including allegations that NYPD's weekly CompStat meetings put pressure on police officers to engage in behaviors designed to make them appear "productive" (¶ 114); and that NYPD maintains a de facto quota system requiring a certain number of arrests per month, with police officers facing adverse employment consequences for not meeting the quotas (¶ 125);

- Judge Scheindlin's Opinion & Order in *Floyd* dated August 12, 2013, finding *inter alia* that NYPD officers experienced significant pressure to increase their stop-and-frisk activity (p. 64), that senior NYPD officials routinely pressured commanders to increase enforcement activity, and that the pressure was passed down to the rank and file (p. 67-71); and that police officers may suffer adverse employment consequences for not engaging in enough "proactive enforcement activities," including arrests (p. 80);

- the facts set forth in the Complaints in the class-action *Stinson v. City of New York*, 10 Civ. 2248 (RWS), all of which are incorporated herein, including allegations that quota pressure forced police officers to issue bogus summonses and conduct unlawful stop-and-frisks (Graham Rayman, *NYPD Quotas Leading to Civil Rights Violations, New Lawsuit Says* , Village Voice, June 7, 2010);

- the facts set forth in the Complaints in the class-action *Raymond v. City of New York*, 15 Civ. 6885 (LTS), all of which are incorporated herein, including allegations by the twelve police officer plaintiffs that quotas "absolutely exist," that the burden falls predominantly upon minority

neighborhoods, and that police officers who do not meet quotas are punished and subjected to retaliation (*NYPD Still Enforces Illegal Quota System, Minority Officers Allege in Lawsuit*, http://www.nbcnewyork.com/news/local/nypd-quotas-new-york-city-police-department-bill-bratton-edwin-raymond-370118201.html, Feb. 24, 2016);

- a full-page ad in the May 7, 2012 Daily News taken out by the Patrolmen's Benevolent Association, stating that in regard to quotas, "Don't Blame the Cop, Blame NYPD Management";

- testimony in August 2013 by former NYPD officer Genaro Morales that he and other members of his Bronx Narcotics team fabricated stories about narcotics possession and sale because of pressure to meet arrest quotas (Tara Palmeri & Kirstan Conley, *Cops Lied to Reach Arrest Quotas*, N.Y. Post, Oct. 14, 2013);

- the revelation in April 2015 by Anthony Miranda, chairman of the National Latino Officers Association, that anti-crime officers on Staten Island and elsewhere were forced to play a "quota game" in which getting insufficient points for making arrests resulted in adverse employment consequences (Thomas Tracy, *NYPD Accused of Giving Points to Staten Island Cops for Making Arrests to Hit Quota*, N.Y. Daily News, Apr. 1, 2015);

- statements by NYPD Inspector General Philip Eure in April 2015 that NYPD would be evaluating officers based in part upon the number of arrests made (Rocco Parascandola, *NYPD Inspector General Philip Eure Calls for Upgrade of Cop Performance Reviews, Recommends Data-Driven Approach*, N.Y. Daily News, Apr. 21, 2015);

- allegations in January 2016 by P.O. Michael Birch that he was targeted by supervisors for not making enough arrests of minority young people (John Marzulli, *NYPD Cop Claims He Was Punished for Not Stopping Enough Black, Hispanic Teens in Subway*, N.Y. Daily News, Jan. 7, 2016);

- allegations in November 2016 by former P.O. Brendan Cronin that unrelenting pressure to meet arrest quotas drove him to drink (Stephen Rex Brown, *Former NYPD Cop Blames Arrest Quota Pressure for Drunken Shooting Frenzy That Nearly Killed a Man*, N.Y. Daily News, Nov. 25, 2016);

- allegations in November 2016 by former P.O. Doreen Debattista that she got flak for not making enough arrests (Victoria Bekiempis, *Cop Slaps NYPD Supervisors With $5.5M Discrimination Suit After Allegedly Forcing Her Into Retirement Due To Gender, Age*, N.Y. Daily News, Nov. 23, 2016);

- allegations in November 2018 by the president of the Sergeants Benevolent Association that the Commanding Officer of the 123rd Precinct threatened to punch or kill colleagues who did not adhere to his aggressive quota-driven agenda for arrests and summonses (Tina Moore & Juan Gonzalez, *NYPD Sergeants Union Plans Protest Against 'Abusive' Staten Island Commander*, N.Y. Post, Nov. 17, 2018); and

- allegations in December 2019 by retired P.O. Pierre Maximilien that officers in NYPD Transit District 34 had arrests quotas and were punished when they did not meet them (Stephen Rex Brown & Graham Rayman, *Ex-Cop Details NYPD 'Collar Quotas'*, N.Y. Daily News, Dec. 5, 2019).

42.     Upon information and belief, as a direct result of these quotas, defendants in the instant matter felt pressure to arrest plaintiff JESUS HERNANDEZ without probable cause and to manufacture evidence against him.

**FIRST CLAIM FOR RELIEF**
**DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

43.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "42" with the same force and effect as if fully set forth herein.

44.    All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

45.    All of the aforementioned acts deprived plaintiff JESUS HERNANDEZ of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

46.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

47.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

48.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

**SECOND CLAIM FOR RELIEF**
**FALSE ARREST UNDER 42 U.S.C. § 1983**

49.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "48" with the same force and effect as if fully set forth herein.

50.    As a result of the aforesaid conduct by defendants, plaintiff JESUS HERNANDEZ was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege or consent.

51.　　As a result of the foregoing, plaintiff JESUS HERNANDEZ's liberty was restricted for an extended period of time, he was put in fear for his safety, and he was humiliated, without probable cause.

### THIRD CLAIM FOR RELIEF
### UNLAWFUL SEARCH UNDER 42 U.S.C. § 1983

52.　　Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "51" with the same force and effect as if fully set forth herein.

53.　　Defendants strip-searched plaintiff JESUS HERNANDEZ in the absence of any individualized reasonable suspicion that plaintiff was concealing weapons or contraband.

54.　　As a result of the foregoing, plaintiff JESUS HERNANDEZ was subjected to an illegal and improper strip search.

55.　　The foregoing unlawful strip search violated plaintiff JESUS HERNANDEZ's constitutional right to privacy, as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

### FOURTH CLAIM FOR RELIEF
### MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983

56.　　Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "55" with the same force and effect as if fully set forth herein.

57.　　Defendants issued legal process to place plaintiff JESUS HERNANDEZ under arrest.

58.　　Defendants arrested plaintiff JESUS HERNANDEZ in order to obtain a collateral objective outside the legitimate ends of the legal process.

59.　　Defendants acted with intent to do harm to plaintiff JESUS HERNANDEZ without excuse or justification.

## FIFTH CLAIM FOR RELIEF
## MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

60.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "59" with the same force and effect as if fully set forth herein.

61.     Defendants misrepresented and falsified evidence before the District Attorney.

62.     Defendants did not make a complete and full statement of facts to the District Attorney.

63.     Defendants withheld exculpatory evidence from the District Attorney.

64.     Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff JESUS HERNANDEZ.

65.     Defendants lacked probable cause to initiate criminal proceedings against plaintiff JESUS HERNANDEZ.

66.     Defendants acted with malice in initiating criminal proceedings against plaintiff JESUS HERNANDEZ.

67.     Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff JESUS HERNANDEZ.

68.     Defendants lacked probable cause to continue criminal proceedings against plaintiff JESUS HERNANDEZ.

69.     Defendants acted with malice in continuing criminal proceedings against plaintiff JESUS HERNANDEZ.

70.     Defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

71.     Notwithstanding the perjurious and fraudulent conduct of defendants, the criminal proceedings were terminated in plaintiff JESUS HERNANDEZ's favor shortly prior to July 19, 2021, when all charges against him were dismissed.

**SIXTH CLAIM FOR RELIEF**
**DENIAL OF DUE PROCESS VIA FABRICATION OF EVIDENCE**
**UNDER 42 U.S.C. § 1983**

72.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "71" with the same force and effect as if fully set forth herein.

73.     Defendants created false evidence against plaintiff JESUS HERNANDEZ.

74.     Defendants forwarded false evidence to prosecutors in the New York County District Attorney's Office.

75.     Defendants misled juries, judges, and/or prosecutors by providing false testimony and proffering false evidence throughout the criminal proceedings.

76.     In creating and forwarding false information to prosecutors, defendants deprived plaintiff JESUS HERNANDEZ of due process and violated his constitutional right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

**SEVENTH CLAIM FOR RELIEF**
**FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983**

77.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "76" with the same force and effect as if fully set forth herein.

78.     Each and every individual defendant had an affirmative duty to intervene on plaintiff JESUS HERNANDEZ's behalf to prevent the violation of his constitutional rights.

79.     The individual defendants failed to intervene on plaintiff JESUS HERNANDEZ's behalf to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

80.     As a result of the aforementioned conduct of the individual defendants, plaintiff's constitutional rights were violated.

**EIGHTH CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983**

81.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "80" with the same force and effect as if fully set forth herein.

82.     Defendants arrested, incarcerated, and prosecuted plaintiff JESUS HERNANDEZ in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest, incarceration, and prosecution would jeopardize plaintiff's liberty, well-being, safety and constitutional rights.

83.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

84.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

85.     The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

a)      wrongfully arresting individuals on the pretext that they were involved in drug transactions;

b)      manufacturing evidence against individuals allegedly involved in drug transactions; and

c)      arresting innocent persons in order to meet "productivity goals" (i.e., arrest quotas).

86.     The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department constituted a deliberate indifference to the safety, well-being and constitutional rights of plaintiff JESUS HERNANDEZ.

87.     The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiff JESUS HERNANDEZ as alleged herein.

88.     The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by plaintiff JESUS HERNANDEZ as alleged herein.

89.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiff JESUS HERNANDEZ was falsely arrested and incarcerated and maliciously prosecuted.

90.     Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of plaintiff JESUS HERNANDEZ.

91.     Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of plaintiff JESUS HERNANDEZ's constitutional rights.

**NINTH CLAIM FOR RELIEF**
**DEPRIVATION OF RIGHTS UNDER N.Y.C. ADMIN. CODE § 8-801**

92.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "91" with the same force and effect as if fully set forth herein.

93.     The acts of defendant officers constituted conduct under color of any law, ordinance, rule, regulation, custom or usage.

94.     The acts and omissions of defendant officers, as detailed in the foregoing paragraphs, caused plaintiff JESUS HERNANDEZ to be deprived of his rights under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code §§ 8-801, *et seq.*, to wit:  to be secure in his person, house, papers, and effects against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

95.     By reason of the acts and omissions of defendant officers, as detailed in the foregoing paragraphs, plaintiff JESUS HERNANDEZ has endured loss of liberty and emotional injuries and was otherwise damaged and injured.

96.     Defendant officers are "covered individuals" as defined in 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code §§ 8-801, *et seq.*, in that they are employees of the New York City Police Department.

97.     The City of New York, as the employer of the covered individual defendant officers, is liable to plaintiff JESUS HERNANDEZ for the wrongdoing of the covered individual defendant officers.

98.     All of the foregoing acts by defendants deprived plaintiff JESUS HERNANDEZ of federally protected rights and/or rights under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code §§ 8-801 *et seq.*, including, but not limited to, the right:

        A.     Not to be deprived of liberty without due process of law;

        B.     To be free from seizure and arrest not based upon probable cause;

        C.     To be free from unlawful search;

        D.     To be free from unwarranted and malicious criminal prosecution;

        E.     To be free from malicious abuse of process;

        F.     Not to have cruel and unusual punishment imposed upon him; and

G.   To receive due process and equal protection under the law.

99.   As a result of the foregoing, plaintiff is entitled to compensatory damages in the sum of one million dollars ($1,000,000.00) and is further entitled to punitive damages against the individual defendants in the sum of one million dollars  ($1,000,000.00).

**WHEREFORE**, plaintiff JESUS HERNANDEZ demands judgment in the sum of one million dollars ($1,000,000.00) in compensatory damages and one million dollars ($1,000,000.00) in punitive damages, plus reasonable attorney's fees, costs, and disbursements of this action.

Dated:   New York, New York
January 19, 2022

_____/s_____
ROSE M. WEBER (RW 0515)
30 Vesey Street, Suite 1801
New York, NY 10007
(917) 415-5363